## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

LATORIE PRESTON for
K.B., a minor,

      Plaintiff,

vs.                                                                  CASE NO. 3:06-cv-1080-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.
_____

## ORDER AND OPINION

This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review

of the final decision of the Commissioner of Social Security of the Social Security

Administration (Commissioner) denying her claim for supplemental security income

disability payments (SSI).  Plaintiff filed a legal brief in opposition to the Commissioner's

decision (Doc. #9, P's Brief).  Defendant filed his brief in support of the decision to deny

disability benefits (Doc. #12, D's Brief).  Both parties have consented to the exercise of

jurisdiction by a magistrate judge, and the case has been referred to the undersigned by

an Order of Reference dated April 5, 2007 (Doc. #8).  The Commissioner has filed the

transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate

page number). Upon review of the record, the Court found the issues raised by Plaintiff

were fully briefed and concluded oral argument would not benefit the Court in its making

its determinations.  Accordingly, the matter has been decided on the written record.  For

the reasons set out herein, the Commissioner's decision is **AFFIRMED**.

## I. PROCEDURAL HISTORY

On June 18, 2003, Plaintiff's mother, Latorie Preston, filed an application for supplemental security income disability payments on behalf of her child, K.B., who was born May 5, 2002 (Tr. 67-70).[1]  Plaintiff's mother claims her child is disabled due to spina bifida, a v/p shunt and braces on her legs (Tr. 79).  The mother also alleged her child had the impairments of hearing problems and urinary incontinence (Tr. 324-25).  The claim was denied at the administrative level and on request for reconsideration (Tr. 24-36).  The mother then filed a request for a hearing before an Administrative Law Judge (ALJ) on January 15, 2004 (Tr. 37).  ALJ Patrick F. McLaughlin held the administrative hearing  on April 11, 2006 in Jacksonville, Florida (Tr. 311-392).

Plaintiff, then almost four years old, appeared at the hearing with her mother, Latorie Preston.  Ms. Preston testified at the administrative hearing, as did Dr. Iris Eisenberg, M.D., a medical expert (ME).[2]  Plaintiff has been represented by attorney Alfred J. Stanley, Jr. throughout this case, both during the underlying administrative phase and now at the federal court level.

ALJ McLaughlin issued a decision denying Plaintiff's claim on June 28, 2006 (Tr.

---

[1]An individual cannot receive SSI benefits for any period prior to the month in which the SSI application is filed.  *See* 20 C.F.R. § 416.501.  Thus, the relevant period for deciding Plaintiff's case is the month in which she filed her SSI application and thereafter. *See, e.g., Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993) (stating the proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date).

[2]Dr. Eisenberg's vitae shows that she is Board Certified in Pediatrics and Adolescent Medicine, as well as Advanced Pediatric Life Support and Advanced Neonatal Life Support (Tr. 64-65).  Dr. Eisenberg practices medicine at Oceanway Pediatrics in Jacksonville, Florida. (Tr. 64).

11-23).   The Appeals Council (AC) denied Plaintiff's request for review (Tr. 5-7), thus

making the ALJ's decision the final decision of the Commissioner.   Plaintiff's counsel filed

the instant action in federal court on December 8, 2006 (Doc. #1, Complaint).   The Court

has reviewed and given due consideration to the record in its entirety, including the parties'

arguments presented in their briefs and the materials provided in the transcript of the

underlying proceedings.

## II. BACKGROUND FACTS AND THE ALJ'S FINDINGS

The child's history is set forth in detail in the ALJ's decision, P's Brief and D's Brief.

By way of summary, the child was born with lumbrosacral myelomeningocele (a.k.a. spina

bifida)[3] at L5-S1, which was treated surgically while in the hospital, and hydrocephalus,[4]

which was also treated surgically while in the hospital by placement of ventriculoperitoneal

shunt (a.k.a. v/p shunt) (Tr. 197-209B).   She has been diagnosed with weak plantar flexion

---

[3] Myelomeningocele-A congenital defect in which the neural arches fail to close, so exposing the contents of the spinal canal posteriorly. Usually occurring in the lumbosacral region (lower back) of the spine. *The Online Medical Dictionary*, available at http://www.medilexicon.com/searches/medterms.php (last visited March 26, 2008).

Spina Bifida-A congenital limited defect in the spinal column, characterized by the absence of the vertebral arches through which the spinal membranes and spinal cord may protrude.  *See id.*

[4]Hydrocephalus-A condition marked by dilatation of the cerebral ventricles, most often occurring secondarily to obstruction of the cerebrospinal fluid pathways and accompanied by an accumulation of cerebrospinal fluid within the skull, the fluid is usually under increased pressure, but occasionally may be normal or nearly so.  *The Online Medical Dictionary*, available at http://www.medilexicon.com/searches/medterms.php (last visited March 26, 2008).

Ventriculoperitoneal shunt-A surgical procedure to insert a communicating catheter to relieve intracranial pressure caused by hydrocephalus. In this procedure the cerebrospinal fluid is shunted from the ventricles of the brain into the peritoneal cavity via a surgically implanted tube.  *See id.*

and neurogenic bladder (*see, e.g.*, Tr. 212-15).[5]

After reviewing the medical records and testimony given at the hearing, the ALJ found that the child had never engaged in substantial gainful activity (Tr. 16).  The ALJ also found that the child had the severe impairments of spina bifida, neurogenic bladder, weak ankles and a mild hearing impairment (Tr. 16).

Based on the evidence, the ALJ determined that the child did not have an impairment or a combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P of the Regulations No. 4 (Tr. 16).  The ALJ specifically referenced Listing 111.08 Meningomyelocele and related disorders (Tr. 16).  The ALJ further found that the mother's statements "concerning the intensity, duration and limiting effects of the child's symptoms are not entirely credible" (Tr. 17).  The ALJ determined that the child had functional limitations resulting from her impairments and their symptoms, as follows: no limitation in acquiring and using information; no limitation in attending and completing tasks; less than marked limitation in interacting and relating with others; no limitation in moving about and manipulating objects; no limitation in the ability to care for herself, because this domain is not applicable due to the child's age; and, less than marked limitation in heath and physical well-being  (Tr. 17-23).  Based on these limitations, the ALJ found that the

_____

[5]Plantar flexion-Turning the foot or toes toward the plantar surface; the plantar surface is the sole of the foot. *The Online Medical Dictionary*, available at http://www.medilexicon.com/searches/medterms.php (last visited March 26, 2008).
Neurogenic bladder-A dysfunction of the bladder due a malfunction of the autonomic nerves which control bladder function.  *See id.*

child's impairments did not functionally equal the criteria of any listed impairment in Appendix 1, Subpart P of the Regulations No. 4 (Tr. 23).  For the child's impairments to functionally equal a listed impairment, the child's impairments must result in "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain.  20 C.F.R. § 416.926a(a).[6]  In accord with his findings in each of the described domains, the ALJ determined that the child had not been under a disability at any time through the date of the decision (Tr. 23).

## III. SOCIAL SECURITY ACT ELIGIBILITY AND THE STANDARD OF REVIEW

In order for an individual under the age of eighteen to be entitled to SSI disability payments, the claimant must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. § 416.906.

Under the applicable Regulations, the Commissioner employs a three-step evaluation process. First he determines whether the child claimant is engaged in substantial gainful activity.  If not, the next determination is whether the child claimant has a severe impairment or combination of impairments.  If so, the Commissioner must then determine whether the impairment or combination of impairments meet or is medically or functionally equal to an impairment listed in Appendix 1 of 20 C.F.R. part 404, subpart P, and otherwise satisfy the duration requirement. Where the claimant fails to satisfy any of the criteria, he or she will be found not disabled. Where each of these requirements is

---

[6]All references to 20 C.F.R. shall be to the 2007 edition, unless otherwise noted.

satisfied, the claimant will be found disabled. 20 C.F.R. §§ 416.924 -416.926a; *Wilson v. Apfel*, 179 F.3d 1276, 1277 n.1 (11th Cir. 1999).

The scope of the Court's review is generally limited to determining whether the correct legal standards were applied, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).

The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the Court has not re-weighed the evidence, but has determined whether the record, as a whole, contains sufficient evidence to permit

a reasonable mind to conclude that the Plaintiff, in this case the child claimant, is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

## IV. ISSUES AND ANALYSIS

Plaintiff asserts that the ALJ erred in finding that she was not disabled as contemplated by the listings pertaining to meningomyelocele, specifically, Listing 111.08(B)(1) in Appendix 1 of 20 C.F.R. part 404, subpart P (P's Brief at 8).  A listing provides for a presumptive disability finding if all specified medical factors are met or the child claimant can demonstrate a severity in her impairments that equals the medical factors.  Here, Plaintiff maintains the record shows that she met or equaled Listing 111.08(B)(1) in that she suffered from meningomyelocele (spina bifida) and she also had a less severe motor function, that was more than slight, with her ankles and feet, and a urinary incontinence inappropriate for her age of less than four years old (*see* P's Brief, in general).  Plaintiff alleges the ALJ erred in failing to find her disabled under this listing because he improperly ignored the opinions of Plaintiff's treating physicians, failed to fully consider the testimony of Plaintiff's mother regarding the child's incontinence and motor dysfunction of her ankles and feet, and improperly relied upon the opinions of a non-examining medical expert who testified at the administrative hearing (*see* P's Brief 8-10).

Defendant counters that Plaintiff failed to present medical evidence that her impairments satisfied Listing 111.08(B), either by actually meeting all the specified medical criteria or by demonstration of a severity equal to all the criteria (D's Brief at 5-6). Defendant asserts the ALJ properly relied on the testimony of Dr. Eisenberg as a medical expert in that her testimony was based on consideration of the relevant evidence and is supported by the medical findings and the record as a whole (D's Brief at 10).  Defendant

7

concludes substantial evidence supports the ALJ's findings and his determination that Plaintiff was not disabled within the meaning of the Social Security Act.

In this case, the Court agrees with Defendant.

**Treating and Examining Physicians' Opinions**

Plaintiff's asserted issue of error here concerns whether the ALJ gave proper weight to the opinion of Plaintiff's treating physicians.  In fact, Plaintiff claims the ALJ ignored the treating physicians' opinions (P's Brief at 8).  Plaintiff also turns to the findings of the consulting physician for support that she should have been found disabled under the listings (P's Brief at 5, 9).

The case law and the Regulations require the ALJ to give substantial weight to the opinion, diagnosis and medical evidence of a treating physician, unless there is good cause to do otherwise.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580,583 (11th Cir. 1991); 20 C.F.R. § 416.927(d).   If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 416.927(d)(2). The weight afforded a medical source's opinion on the issue(s) of the nature and severity of a claimant's impairments depends upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support his opinion, how consistent the opinion is with the record as a whole, the specialty of the medical source, and other factors.   20 C.F.R. § 416.927(d).  The ALJ may consider a physician's medical specialty and decide to give more weight to the opinions of physicians in their areas of medical expertise and

8

specialty.  20 C.F.R. § 416.927(d)(5).

Review of the hearing transcript and ALJ's decision reveals he did consider the underlying record evidence, including the treating physicians' notes and opinions.  In his decision, the ALJ points to the records from Shands hospital confirming the child was born with lumbosacral myelomeningocele (Tr. 16).[7]  The ALJ also refers to the document "5F/7" in his decision (Tr. 16), which is the Nemours Children's Clinic note on June 9, 2003 concerning the child's fitting of solid ankle foot orthoses (found at Tr. 144), to the records concerning her mild hearing loss (found at Tr. 293-94) and to the consultative examination performed by Dr. Jeremy Harris, M.D. (found at Tr. 300-02).  During the hearing there is much discussion about Exhibit 20F, which is the statement from treating physician Dr. Michael Erhard, M.D., that Plaintiff's urinary incontinence/neurogenic bladder condition is within a reasonable degree of probability related to or caused by lumbar spina bifida (Tr. 309, 315-17).  Furthermore, much of the medical record is discussed in detail by the ALJ, Dr. Eisenberg and Plaintiff's mother during the course of the hearing (Tr. 325-77).

Plaintiff relies on the findings of Dr. Harris' consultative examination in November 2005 to support her claim of more than slight motor dysfunction of her ankles and feet (P's

---

[7]In this instance, the ALJ cites to Exhibit 1F, which actually is the Childhood Disability Evaluation Form, completed after the request for reconsideration by reviewing physician Dr. Benjamin Johnson, M.D. (Tr.103-08).  As Exhibit 1F does not contain a reference "lumbosacral myelomeningocele" but Exhibit 7F does, the Court finds a likely typographical error was made in the decision.  However, the Court would also note that many of the individual Shands documents in Ex. 7F appear to marked by hand as "1F." (*See, e.g.*, Tr. 198-209B.)  In fact, the Court notes that many of the manual notations on the exhibits do not correspond to the List of Exhibits pages as identified in front of the administrative record (*see, e.g.* Tr. 110-13 noted at Ex. 6F, while appearing in the index as Ex. 3F).  For the sake of clarity, the Court refers to transcript page numbers (i.e., Tr. followed by the page number).

Brief at 9).  Dr. Harris found there was "no Babinski sign,"[8] but Plaintiff's balance was "less good than normal" (Tr. 301).   Dr. Harris also observed Plaintiff walked with her ankles turned in like an inexperienced skater on ice skates (Tr. 301).  Dr. Harris' overall impression on this matter was that Plaintiff had a "gait abnormality" but "can ambulate with poor balance" (Tr. 301). Contrary to Plaintiff's assertions, however, the findings of Dr. Harris do not "fly in the face" of Dr. Eisenberg's description of the Plaintiff's foot/ankle condition.

Dr. Eisenberg, reviewed all the medical evidence of record prior to the administrative hearing, heard the testimony throughout the hearing and observed the child walking during the course of the hearing, which would include the demonstration where the child walked on the table for the ALJ and those instances where the ALJ apparently attempted to convince the child to sit in a chair during the hearing rather than stand or run around (Tr. 313, 327, 328, 330, 338).  As a board certified pediatrician, Dr. Eisenberg testified that Plaintiff's motor dysfunction of her feet, legs and ankles was clinically trivial and minimal (Tr. 344-48, 355-61). To support her assessment of Plaintiff's degree of motor dysfunction, Dr. Eisenberg noted that Plaintiff walked at twelve months of age, which was considered normal (Tr. 339); did not need tendon release; has not required physical therapy; and has not required emergency room treatment as a result of falling down a flight of stairs (Tr. 360).  Dr. Eisenberg further stated that supportive shoes such as "go-go boots" or girls high tops could give Plaintiff similar lateral support as the orthotic braces prescribed for her, with

___

[8]Babinski's sign- Extension of the great toe and abduction of the other toes instead of the normal flexion reflex to plantar stimulation, considered indicative of pyramidal tract involvement ("positive" Babinski). *The Online Medical Dictionary,* available at http://www.medilexicon.com/searches/medterms.php (last visited March 26, 2008).

substantial financial savings (Tr. 348-50).

Dr. Eisenberg's testimony does not contradict or even conflict with the findings of Dr. Harris.  Further, Dr. Eisenberg's findings are supported by the improvement in Plaintiff's motor function noted by Plaintiff's treating physician, Dr. John Mazur, in Pediatric Orthopedics with Nemours Children's Clinic.  On November 5, 2002, when Plaintiff was six months old, Dr. Mazur found Plaintiff had dorsiflexion of the feet, but no plantar flexion (Tr. 151).  On March 29, 2005, when Plaintiff was two years and ten months, and had been walking for over a year, Dr. Mazur's examination found Plaintiff to have "weak plantar flexion" (Tr. 212).

Plaintiff's claim that the opinion and/or records of the treating physicians were ignored is without merit.  Plaintiff fails in her attempt to show she suffers more than a slight motor dysfunction through the findings expressed by Dr. Harris in his consultative examination.  Substantial evidence supports the ALJ's finding Plaintiff's motor dysfunction was not more than slight under Listing 111.08(B).[9]

**Credibility of Plaintiff's Mother**

Plaintiff contends that the ALJ failed to properly evaluate her mother's testimony. Plaintiff appears to argue the mother's testimony concerning the child's urinary

_____

[9]As the Court has found substantial evidence supports the ankle/foot dysfunction was insignificant in terms of a finding of disability under the listings, it is unnecessary to discuss in detail the third component under Listing 111.08(B) of urinary incontinence, which Plaintiff asserts is met by her condition.  The Court will note, however, the testimony of Dr. Eisenberg that a child not potty trained at three, almost four, years old is not age inappropriate (Tr. 340-43), does coincide with Dr. Harris' finding that Plaintiff was too young to know if the myelomeningocele will compromise her ability to achieve successful toilet training (Tr. 301), and with treating physician Dr. Michael Erhard's plan in June 2005 to try anticholinergic therapy as Plaintiff gets older (Tr. 255).

incontinence and motor dysfunction of the child's ankles and feet was disregarded by the ALJ (Tr. 8). However, here again review of the ALJ's decision and the extensive hearing testimony reveals otherwise.

In determining whether or not a claimant is disabled, the ALJ must consider all of a claimant's symptoms, and "the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929. If an ALJ decides not to credit a claimant's subjective testimony, or in this case the testimony of the child claimant's guardian, the ALJ must articulate explicit and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *See Foote v. Chater*, 67 F.3d at 1561-62 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)). The articulated reasons must be based on substantial evidence. *Jones v. Dep't of Health & Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991). When making a credibility determination, the decision maker's opinion must indicate an appropriate consideration of the evidence. *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983) (internal citation omitted). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote v. Chater*, 67 F.3d at 1561-62; *see also* 42 U.S.C. § 405(g) (the findings of the Commissioner as to any fact are conclusive if supported by substantial evidence).

Here, Plaintiff alleges the ALJ failed to "give full effect" to the mother's testimony concerning Plaintiff's incontinence and motor dysfunction (P's Brief at 8). However, these matters are the subject of extensive discussion during the administrative hearing and are fully addressed in the ALJ's decision (Tr. 324-34, 338-50, 16-17, 21-23). The ALJ did not reject the mother's testimony outright, but found it to be "not entirely credible" concerning

12

the intensity, duration and limiting effects of her child's symptoms (Tr. 17).  In support of this finding, the ALJ cites to the record evidence that Plaintiff walked at twelve months of age, is currently able to walk without assistance (Plaintiff appeared at the hearing without wearing braces or splints) and her speech delays are mild at worst (Tr. 17).  Additionally, the ALJ was able to personally observe Plaintiff during the course of the hearing and in seeing Plaintiff face to face, determined the mother's statements were not entirely credible.

Here, there is a clearly articulated credibility finding that is supported by substantial evidence.

**Use of Medical Expert**

Plaintiff takes issue with the ALJ's reliance on the "opinions of a physician that never examined the child, appeared only at the hearing, and provided no notice" to the Plaintiff of the ALJ's intention to rely upon or utilize medical expertise at the hearing (P's Brief at 2).

As to the issue of notice, Plaintiff provides no authority for the proposition that advance notice is required before an ALJ may call a medical expert.  While an ALJ is not required to utilize the services of a medical expert, it is within his discretion to do so, as provided by the Regulations.  *See* 20 C.F.R. § 416.927(f)(2)(i)-(iii).  The ALJ is required to consider the opinions of a medical expert in accord with the Regulations governing opinion evidence.  *Id*.  Advance notice is not specified as a requirement for use of a medical expert. What is required is the observance of procedural due process during the course of the administrative hearing.  *Richardson v. Perales*, 402 U.S. at 401, 409.  Concomitant with due process is the right to heard and the right "to conduct such cross-examination as may be required for a full and true disclosure of the facts."  *Id*. at 409 (comparing the Social

13

Security Act with the mandates of the Administrative Procedures Act, 5 U.S.C. § 556(d)) (internal quotations omitted).  Plaintiff has not specifically complained of a due process violation, nor does the Court see one.[10]  Plaintiff's counsel was given the opportunity to make statements and question the witnesses, including Dr. Eisenburg, the medical expert (see Tr. 337, 355-70, 378-81).

As to the ALJ's reliance on the opinions of Dr. Eisenberg, the Court finds no error. In this case, the ALJ prudently chose to enlist a medical expert with board certification in pediatrics to offer input concerning the obviously complicated medical condition of a minor child under four years of age.  *See id.*  As noted *supra*, the medical expert reviewed the record evidence, was present throughout the hearing in which she heard as well as gave testimony, and was able to observe Plaintiff first hand.  Dr. Eisenberg's opinions are not inconsistent with the medical evidence of record.  The ALJ was entitled to rely upon her opinions concerning the severity of Plaintiff's impairments and whether Plaintiff met a listing.  20 C.F.R. § 416.927(f)(2)(iii).

## V. CONCLUSION

The Court finds there is substantial evidence to support the ALJ's decision.  For the reasons stated herein, the decision of the Commissioner is **AFFIRMED** pursuant to

---

[10]*Compare*, *Leik v. Barnhart*, 296 F.Supp.2d 1345 (M.D. Fla. 2003) (finding the ALJ committed reversible error by denying the plaintiff the opportunity to cross-examine two non-examining physicians who submitted written opinions after the administrative hearing, when the ALJ relied upon the medical expert opinions which contradicted the plaintiff's treating physicians).  *See also, Demenech v. Sec'y of the Dep't of Health & Human Services*, 913 F.2d 882, 884-85 (11th Cir.1990) (holding a claimant's right to procedural due process is violated where his claim to Social Security benefits is denied based upon post-hearing medical reports without giving the claimant an opportunity to subpoena and cross-examine the authors of those reports).

sentence four of 42 U.S.C. § 405(g).

The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file.  Each party shall bear its own costs.

**DONE AND ORDERED** at Jacksonville, Florida this 27th day of March, 2008.

Copies to counsel of record

THOMAS E. MORRIS
United States Magistrate Judge